

SO ORDERED

Lloyd King
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br>1910 PARTNERS,<br><br>Debtor. | Case No. 15-00009<br>(Chapter 11) |
| ASSOCIATION OF APARTMENT<br>OWNERS OF CANTERBURY<br>PLACE,<br><br>Plaintiff,<br><br>vs.<br><br>1910 PARTNERS, a Hawaii limited<br>partnership; PACIFIC GUARDIAN<br>LIFE INSURANCE COMPANY,<br>LIMITED, a Hawaii corporation,<br><br>Defendants. | **Adversary No. 15-90006** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

These *Findings of Fact and Conclusions of Law* follow a trial on the merits

on January 25, 2016. Terrance Revere, Esq., Miranda F. Tsai., Esq., and Jerrold K.

Guben, Esq. appeared for the Plaintiff, while Chuck C. Choi, Esq. and Neil J. Verbrugge, Esq. appeared on behalf of Defendant. By stipulation, the record includes all of the exhibits introduced by Plaintiff and Defendant.

## FINDINGS OF FACT

1. The Association of Apartment Owners of Canterbury Place ("AOAO") and 1910 Partners ("1910") are parties to a Settlement Agreement dated December 23, 2011, which was approved by this Court on January 5, 2012, in In re 1910 Partners, Bankruptcy Case No. 09-01682. Plaintiff's Exhibit 5.

2. With respect to 1910's financial obligations to the AOAO, the Settlement Agreement provides as follows:

  a. Paragraph 2 provides that 1910 will pay to the AOAO the total of $285,387.30 for the full settlement of any and all claims regarding maintenance fees, costs, utilities and all other claims from December 2008 through July 2009.

  b. Paragraph 5 provides that 1910 will pay the actual charge for utilities following the Submetering Completion Date.

  c. Paragraph 6 of the Settlement Agreement provides:

   From the date of the Settlement Agreement, 1910 Partners and the AOAO will continue to negotiate in an attempt to reach agreement upon the categories of maintenance items and percentage allocations to the commercial units. It is anticipated that an agreement will be reached, and that all such items will be fixed and agreed to as part of the budgeting process prior to the Submetering Completion Date. In the event agreement cannot be reached, then the provisions of the Declaration of Horizontal Property Regime: Canterbury Place and of

2

Hawaii law would be applicable, and all parties would retain their rights to dispute such future allocations, other than for utilities (which shall be determined by the submeters).

d.    Paragraph 7 provided a formula relating to the Utility Adjustment Charge for the period from August 2009, through the Submetering Completion Date, August 2013. As per the Utility Adjustment Charge, 1910 was to receive either a credit or a charge for utilities during the period 2009 through 2013 based upon an agreed formula.

3.    The parties agree that the Submetering Completion Date, as defined by the Settlement Agreement, occurred in September 2013.

4.    1910 failed to make all of the payments due and owing under Paragraph 2 of the Settlement Agreement in a timely manner. 1910 still owes the AOAO $40,118.39 under Paragraph 2 of the Settlement Agreement.

5.    1910 failed to pay for all of the "current" utility maintenance fees due and owing to the AOAO from September 2014 to January 5, 2015. 1910 owes the AOAO $138,094.79 in "current" utility maintenance fees. Plaintiff's Exhibits 188 and 221.

6.    1910 failed to make all of the payments due and owing under Paragraph 7 of the Settlement Agreement, the Utility Adjustment Charge. 1910 owes the AOAO $553,007.18 for the Utility Adjustment Charge for the period of August 1, 2009, through August 2013. Plaintiff's Exhibits 171-187, 194 and 221.

7.    1910 is the owner of five (5) commercial condominium units in the

U.S. Bankruptcy Court - Hawaii  #15-90006  Dkt # 193  Filed  03/04/16  Page 3 of 31

Canterbury Place condominium project. Plaintiff's Exhibits 84-88.

8. 1910's commercial units have a value of somewhere between $5.21 million (pursuant to an appraisal by Mr. James Hallstrom), $7 to $9 million (as provided by the Debtor's Liquidation Analysis in the Disclosure Statement), and $14.7 million (as claimed in the Debtor's Schedule A). Bankruptcy Case No. 15-00009; Dkt. Nos. 141 and 36.

9. 1910 failed to make payment for its non-utility maintenance fees due and owing for its five commercial units. 1910 owes the AOAO $43,420.51 for non-utility maintenance fees due and owing from September 2014 to January 5, 2015. Plaintiff's Exhibits 188 and 221.

10. As of September 14, 2014, 1910 failed to make payment for its current utility maintenance fees, non-utility maintenance fees and Utility Adjustment Charge for the period 2009 to 2015, in the amount of $889,215.71.

11. Due to 1910's failure to make payments as required, the AOAO filed and recorded five (5) statutory liens against 1910's commercial units pursuant to Haw. Rev. Stat. § 514B-146, the Declaration of Horizontal Property Regime: Canterbury Place ("Declaration") and the Restatement of By-Laws of the Association of Apartment Owners of Canterbury Place ("Bylaws"). Plaintiff's Exhibits 96 and 97.

12. The statutory and contractual liens were filed in the Office of the

Assistant Registrar of the Land Court of the State of Hawaii and recorded in the Bureau of Conveyances of the State of Hawaii as follows:

    a.    As to Commercial Unit 1, filed in the Office as Document No. T-9024189 and recorded in the Bureau as Document No. A-53720916 in the amount of $878,110.15.  Plaintiff's Exhibit 80.

    b.    As to Commercial Unit 2, filed in the Office as Document No. T-9024190 and recorded in the Bureau as Document No. A-53720917 in the amount of $872,757.19.  Plaintiff's Exhibit 81.

    c.    As to Commercial Unit 3, filed in the Office as Document No. T-9024193 and recorded in the Bureau as Document No. A-53720920 in the amount of $877,062.09.  Plaintiff's Exhibit 78.

    d.    As to Commercial Unit 4, filed in the Office as Document No. T-9024191 and recorded in the Bureau as Document No. A-53720918 in the amount of $876,344.59.  Plaintiff's Exhibit 79.

    e.    As to Commercial Unit 5, filed in the Office as Document No. T-9024192 and recorded in the Bureau as Document NO. A-53720919 in the amount of $904,326.31.  Plaintiff's Exhibit 77.

13.    Along with the amounts due and owing under Paragraph 7 of the Settlement Agreement, $553,007.18, 1910 also owes to the AOAO $346,208.53 in non-utility and utility maintenance fees that were due and owing prior to September 2014.  Plaintiff's Exhibits 174 and 221.

14.    Pursuant to Section 4 of the Bylaws, interest of 1% per month accrues on unpaid assessments from the assessment due date.  Plaintiff's Exhibit 96.

15.    1910 owes to the AOAO $32,815.21 in pre-petition interest on the amounts owed in the statutory and contractual liens for the period of September

U.S. Bankruptcy Court - Hawaii   #15-90006   Dkt # 193   Filed  03/04/16   Page 5 of 31

2014 to January 4, 2015.  Plaintiff's Exhibit 221.

16.    1910 owes, as of September 14, 2014, including all delinquent fees and charges, a total of $899,215.71, as reflected in the five (5) statutory liens.

17.    1910 owes to the AOAO $11,592.33 in post-petition interest on the amounts owed in the statutory liens accruing from January 5, 2015, to January 31, 2016.  Interest continues to accrue at a per diem rate of $295.626, as provided by 11 U.S.C. § 506(b).   Plaintiff's Exhibit 221.

18.    The AOAO incurred attorneys' fees and costs, pre- and post-petition, to collect 1910's delinquent assessments, to foreclose its liens and to enforce the provisions of the Declaration and Bylaws in the amount of $567,936.25 (post-petition) and $154,835.89 (pre-petition).  As provided by 11 U.S.C. § 506(b), the AOAO is entitled to full reimbursement of its attorneys' fees and costs up to the value of the collateral securing the AOAO's claim.  Plaintiff's Exhibits 208 and 209.

19.    The AOAO timely filed its proof of claim on May 12, 2015, as Claim No. 3.  The AOAO filed its amended proof of claim on May 12, 2015.  The AOAO's proof of claim and its accompanying documents support a fully secured claim in the amount of $1,308,500.00, as an oversecured claim based on the value of the collateral securing the AOAO claim.  Plaintiff's Exhibit 221.

20.    Pacific Guardian Life ("PGL") has a senior secured claim in the

U.S. Bankruptcy Court - Hawaii   #15-90006   Dkt # 193   Filed  03/04/16   Page 6 of 31

amount of approximately $2.6 million.  PGL did not file a proof of claim but was scheduled by 1910 as an undisputed secured creditor.  PGL has additional non-debtor collateral to secure its claim, including a security interest in a "sandwich" position owned by an entity controlled by Bruce C. Stark.

21.    Based on the senior secured claim of PGL, in the undisputed scheduled amount of $2.6 million, as per 1910's Schedule C, and the AOAO claim of $1,308,500.00 as per Proof of Claim No. 3, the AOAO is an oversecured creditor since the aggregate claims of PGL and the AOAO are less than the three measures of value of 1910's property securing the PGL and the AOAO liens: $5.2 million, as per Plaintiff's Exhibit 212, $7 to $9 million, as per 1910's Liquidation Analysis, and $14.7 million valuation, the scheduled value of 1910's property.

22.    The AOAO's allocation of maintenance fees and expenses are controlled by Haw.Rev.Stat. § 514B-108, the Declaration and Bylaws.

23.    Determination of the annual allocation of expenses and non-utility maintenance fees are determined by the AOAO.

24.    The AOAO holds annual meetings and provides notice of the annual meetings to all unit owners.  Plaintiff's Exhibit 96, p. 5, Article II, § 2.

25.    1910 has received notices of annual meetings.  Plaintiff's Exhibit 96, p. 6, Article II, § 6; Plaintiff's Exhibits 195-198.

26.    The AOAO Board holds monthly meetings on premise and notices of

7

the Board meetings are posted on premise. Notices of the meetings have been sent to Bruce C. Stark by 1910's property managers. Exhibit 96, p.5, Article II, § 2; Plaintiff's Exhibit 216, 74:17-76:4.

27.    1910 is aware that board meetings occur at the Canterbury Place condominium project on a monthly basis. The notices of the AOAO monthly meetings are posted at the Canterbury Place condominium project. Plaintiff's Exhibit 216, 74:17-76:4.

28.    Bankruptcy Case No. 09-01682 closed in February 2012, and the Settlement Agreement was approved for in January 2012. Bruce C. Stark testified that he recalled that Jonathan Steiner of 1910's special counsel, McCorriston Miller Mukai MacKinnon, "possibly" attended two (2) AOAO meetings. Bruce C. Stark previously admitted that he did not attend any AOAO meetings: monthly, annual or budget. Testimony was given to the effect that Bruce C. Stark has not been to the Canterbury Place condominium project in 8-9 years. Transcript of Trial – Day 1; 20:9-14, 21:2-15.

29.    Every year, the AOAO Board sets the annual budget, including non-utility maintenance fees for the next year in the months of August to October, and allocates maintenance fees and expenses accordingly, pursuant to its duties under Haw. Rev. Stat. §§ 514B-144(a) and 148(a). Plaintiff's Exhibits 9 and 107.

30.    The AOAO holds its budget meetings between August and September

U.S. Bankruptcy Court - Hawaii   #15-90006   Dkt # 193   Filed  03/04/16   Page 8 of 31

with the budget finalized in November and effective January 1 of the following year.

31.    1910 received a copy of the 2012 operating budget and did not state any specific objections to the 2012 operating budget or the AOAO's allocation of non-utility maintenance fees.  Plaintiff's Exhibit 203.

32.    In February 2013, Richard Hagstrom, 1910's then property manager, requested a copy of the 2013 budget with a breakdown of how each expense was to be allocated to each commercial unit.  Plaintiff's Exhibit 8.

33.    1910 received a copy of the 2013 operating budget with the requested breakdown.  Plaintiff's Exhibit 9.

34.    It was admitted by 1910 that they never sought to have a representative on the budget committee since January 2012 nor did 1910 participate in the AOAO budget committee hearings. Plaintiff's Exhibit 216, 74:17-76:4.

35.    1910 alleged that the following non-utility maintenance fees were improperly allocated to its commercial units:

| Disputed Item | AOAO Percentage Allocated to 1910 |
| --- | --- |
| Gas | 0% |
| Submeter Monitoring between AOAO and 1910 | 50% of AOAO-1910 submetering |

U.S. Bankruptcy Court - Hawaii   #15-90006   Dkt # 193   Filed  03/04/16   Page 9 of 31

| | |
|---|---|
| Submeter Monitoring between commercial units | 100% |
| General AOAO Legal Fees | 8% |
| Payroll and related expenses (employee medical and works compensation insurance, TDI, taxes) | General Manager: 8% Security: 12.5% Maintenance: 8% Administrative: 8% Services: 8% |

Plaintiff's Exhibits 46, 102.

36.    1910 has withdrawn its claims as to many of the allocations as discovery has shown they were without merit or has had the claims dismissed via summary judgment, leaving the following non-utility maintenance fee allocations at issue:

      a.    Legal Fees
      b.    Pest Control
      c.    Payroll
      d.    Flood Insurance

AOAO Trial Brief, Dkt. No. 144; 1910 Trial Brief, Dkt. No. 142; January 28, 2016 Closing Arguments.

37.    The allocation of the non-utility maintenance fees in the AOAO budget is subject to the "business judgment rule" and the AOAO is authorized to exercise its business judgment in preparing the annual budget and the non-utility maintenance fees. Lamden v. LaJolla Shores Club Dominium Association, 21 Cal.

10

4th 249, 980 P.2d 940 (Cal. 1990) (judicial deference to board decision). In reviewing the AOAO's allocations of non-utility maintenance fees established pursuant to Haw. Rev. Stat. § 514B-144, the Declaration and Bylaws, the AOAO allocations are accorded judicial deference.

38.    1910 had previously stated claims of lost income due to the nightly closing of the security gate and demanded the AOAO be enjoined from closing the security gate, but such claims have been dismissed in the Court's granting of *Plaintiff and Counterclaim-Defendant Association of Apartment Owners of Canterbury Place's Motion in Limine No. 3 To Prohibit 1910's Demands to Enjoin to Closing of the Security Gate* [Dkt. #148] and *Plaintiff and Counterclaim-Defendant Association of Apartment Owners of Canterbury Place's Motion in Limine No. 4 To Prohibit 1910's Claims of Lost Income Per the Parking Gate's Closing* [Dkt. #149], so the claims will not be included or discussed further since the Court has excluded all evidence and arguments related to the installation of the parking lot gate or the closing time of the lot, or any lost profits or damages attributed to the installation or the closing of the parking lot security gate, including any punitive damages and any injunctive relief related to the parking facilities at the Project.

## CONCLUSIONS OF LAW

1.    The Declaration and Bylaws of the AOAO govern the Canterbury Place condominium project.  Plaintiff's Exhibits 97, 96.

2.    Hawaii Revised Statute Chapter 514B, et. seq., also affects the operation of the AOAO and the Canterbury Place condominium project and the AOAO must comply with these statutory provisions.

3.    1910 drafted the Declaration, recorded in 1976, and any ambiguities in the contract should be construed against 1910 and in favor of the AOAO.

4.    1910's commercial condominium units are subject to the Declaration and Bylaws.  Plaintiff's Exhibits 97 and 96.

5.    The Bylaws provide that the Board of Directors have the power to determine common expenses required for the affairs of the AOAO, including operation and maintenance of the Canterbury Place condominium project, and to determine residential, commercial and apartment expenses according to the Declaration.  Plaintiff's Exhibit 96, p. 9, Article II, § 2.

6.    The Declaration provides, as to the classification of expenses, in pertinent part:

> (3) Other Allocations and Rules of Convenience.  To facilitate allocation of expenses as a common, residential and/or commercial expense, the Board shall contract or otherwise obtain a separate accounting, for other services to more than one of the common, residential and commercial elements, unless impractical or significantly

more expensive in the sole judgment of the Board, and if the Board shall make such judgment, the Board shall fairly allocate the expenses of any other service between common, residential and/or commercial expenses in any manner as it shall reasonably determine; provided, that the Board shall, with the notice of assessment, advise the apartment owners of its allocation and . . . if seventy-five percent (75%) of the commercial apartment owners shall object to any allocation in writing within thirty (30) days after the giving of such notice, the matter shall, at the written request of such percentage of residential or commercial apartment owners at any time thereafter up to six (6) months from the date of the giving of such notice, be submitted to an independent certified accountant selected by the Board for its determination, which shall be final and binding on all the apartment owners, and if such a request for submission is not made within said six (6) month period, the allocation made by the Board shall be final and binding, but each apartment owners shall, notwithstanding such objection, have the obligation to pay assessments against his apartment, and if a different allocation is determined pursuant to this subparagraph c(3), the assessments shall be then adjusted accordingly; provided that if required by seventy-five percent (75%) of the commercial apartment owners, the Board, on behalf of such owners, shall enter into separate arrangements with regard to the commercial elements.

Notwithstanding the foregoing, allocations shall be subject to the following rule of convenience:
If any expense less than $500.00 is subject to allocation between or among common, residential and/or commercial expenses, or between residential and commercial expenses, but in the sole judgment of the Board, the precise allocation is uncertain or can be made only after a substantial expenditure of time and/or money, the whole or any part of such expense may be allocated to common, residential and/or commercial expenses as the Board, in its discretion shall determine;

U.S. Bankruptcy Court - Hawaii  #15-90006  Dkt # 193  Filed 03/04/16  Page 13 of 31

**and any such allocation shall be final and binding
except in a clear case of abuse of discretion.**

(emphasis added).  Plaintiff's Exhibit 97.

7.    Restatement (Second) of Judgments, § 84(1) (1982) provides the
general rule that a final and valid arbitration award has the same preclusive effect
as a judgment of a court.

8.    A judgment based upon an arbitration proceeding is a final judgment
for collateral estoppel purposes.

9.    The Arbitrator's Partial Final Award, entered in Arbitration No. 98-
0220-A, <u>Association of Apartment Owners of Canterbury Place v. 1910 Partners,</u>
by Judge E. John McConnell made the final determination that:

> Section 13 of the Declaration at a minimum is ambiguous and
> was drafted by Respondent (1910 Partners).  It is well settled
> that ambiguity in contracts should be construed in favor of the
> non-drafting party.  <u>Pancakes of Hawaii, Inc. vs. Pomare
> Properties Corporation,</u> 85 Haw. 300 (1977).
>
> The allocation of 40% of the chiller system common expenses
> to the commercial units is fair and reasonable.
>
> Hawaii courts have applied the business judgment rule to
> decisions by condominium boards, as long as the board has
> discretion and the decision is reasonable and made in good
> faith. <u>Lussier v. Mar-Van Development, Inc.,</u> 4 Haw. App. 359
> (1983).

Plaintiff's Exhibit 103.

10.    The AOAO has acted within its discretion, reasonably and in good-

14

faith, allocating non-utility maintenance expenses between the Residential Units and Commercial Units for the following items:

a) Flood Insurance (42.5% allocated to the Commercial Units) Submeter Monitoring between the AOAO and 1910 (50% allocated to the Commercial Units)

b) Submeter Monitoring between the Commercial Units (100% allocated to the Commercial Units)

c) General AOAO Legal Fees (8% allocated to the Commercial Units)

d) Gas- 0%

e) Payroll and Related Expenses

a. General Manager- 8%
b. Security- 12.5%
c. Maintenance- 8%
d. Administrative- 8%
e. Services- 8%

11.     Under Haw. Rev. Stat. § 514B-41, the allocations of a mixed-use project may be apportioned in a fair and equitable manner as set forth in the declaration.

12.     The proportionment of the allocations at issue were fair and equitable and in accordance with the terms of the Declaration.

13.     The AOAO's actions and decisions regarding the subject allocations are provided deference under the "business judgment rule."

14.     There is no evidence that the AOAO acted in bad faith with any of the

U.S. Bankruptcy Court - Hawaii   #15-90006   DktE # 193   Filed  03/04/16   Page 15 of 31

allocations.

15.     The AOAO's allocations also pass a rational basis test, as there are no allegations or evidence that the allocations are not rational or were made in bad faith.

16.     The AOAO's allocation of 42.5% to 1910 for flood insurance premiums is reasonable and made in good faith as the parties agreed that 1910 would be responsible for 42.5% of the costs with the basement, which was based upon square footage. Plaintiff's Exhibit 217, 19:4-8.

17.     The AOAO's allocations for the flood insurance, submeter monitoring, general AOAO legal fees, pest control and payroll and related expenses are final and binding upon 1910 as set forth in the Declaration, which provides a method to contest the allocations determined by the AOAO.

18.     In the allocation of non-utility maintenance fees and the AOAO budget, 1910 failed to bargain in good faith by failing to participate in the AOAO monthly, annual and budget meetings.  Bruce C. Stark, in his testimony, admitted that he never attended any meetings for the entire period after January 2012, the effective date of the Settlement Agreement, and rarely, if ever, directed the 1910 property manager or other 1910 professionals attend the AOAO monthly, annual or budget meetings.

19.     The AOAO has not breached the Declaration or the Bylaws and has

16

established that the AOAO's allocations were made in good faith by setting up procedures for all owners, including 1910, to participate in monthly and annual meetings, and the budget-making process.

20.    The AOAO has not breached the Settlement Agreement and has, per §6 of the Settlement Agreement, negotiated in good faith and set up procedures for 1910 to participate in the budget-making process.

21.    The AOAO must treat each owner equally and cannot grant any special preference to 1910 or any other specific owner.

22.    1910 breached the Declaration and Bylaws by failing to timely pay the assessed fees.

23.    1910 breached the Settlement Agreement by failing to make the payments required under Paragraphs 2, 5 and 7 of the Settlement Agreement.

24.    1910 was unjustly enriched by withholding payment of its non-utility maintenance fees, utility maintenance fees, utility adjustment charges, and Settlement Agreement payments.

25.    1910 failed to bargain in good faith by failing to participate in the AOAO monthly, annual and budget meetings.

26.    1910 violated Haw. Rev. Stat. §§ 514B-146 and 514B-146(c), specifically by withholding assessments claimed by the AOAO.

27.    The AOAO is entitled to judgment on its proof of claim.

17

28. 1910 is not entitled to any damages under applicable Hawaii law. The allocations of the non-utility maintenance fees were prepared according to Haw. Rev. Stat. Chapter 514B, and the AOAO's Declaration and Bylaws.

29. Pursuant to Haw. Rev. Stat. § 514B-157, the AOAO is entitled to an award of all of its pre-petition and post-petition attorneys' fees and costs against 1910.

30. Where a bankruptcy matter is decided with reference to state law which does recognize the award of attorneys' fees to a prevailing party, bankruptcy law will generally follow state rule and award attorneys' fees

31. The AOAO is the prevailing party, as it did not breach the Settlement Agreement (Count I); did not breach the Declaration or Bylaws (Count II); the parking claims were dismissed at the motion in limine stage (Counts III-V) and 1910 is not entitled to punitive damages (Count VI). The AOAO has therefore prevailed on the disputed main issues of the case, and is the prevailing party for the purpose of taxing costs and attorneys' fees.

32. The AOAO is entitled to an award of all of its post-petition fees and costs against 1910 and is also entitled to an award of its post-petition interest accruing on its claim against 1910.

33. The AOAO is entitled to its reasonable attorneys' fees.

34. A creditor is entitled to attorneys' fees if (1) the claim is an allowed

secured claim, (2) the creditor is oversecured, and (3) the fees are reasonable, and the fees are provided for under the agreement.

35.    1910 breached Haw. Rev. Stat. Chapter 514B, the Declaration and Bylaws by failing to timely pay the current assessed fees, including the remaining balance of the amounts due from the unpaid maintenance fees for the period December 2008 to July 2009, the current utility charges from September 2013 and the Utility Adjustment Charge for the period August 2009 to August 2013.

36.    1910 violated Haw. Rev. Stat. § 514B-146 and the AOAO prepared and recorded the statutory and consensual liens as provided by the Declaration and Bylaws.

37.    1910 was unjustly enriched by withholding payment of its non-utility maintenance fees, current utility fees, Utility Adjustment Charges, and Settlement Agreement payments in the amounts set forth in AOAO's proof of claim, Proof of Claim No. 3 filed on May 12, 2015, and the exhibits attached to the proof of claim.

38.    1910 violated Haw. Rev. Stat. §§ 514B-146 and § 514B-146(c) by withholding maintenance fees and assessments claimed by the AOAO.

39.    The AOAO is entitled to judgment on its proof of claim in the full amount of $1,308,500.00 plus post-interest from January 5, 2015, and its attorneys' fees as an oversecured creditor as per 11 U.S.C. § 506(b).

40.    As per Fed. R. Bankr. P. Rule 3001(f), the AOAO's documented

U.S. Bankruptcy Court - Hawaii   #15-90006   Dkt # 193   Filed 03/04/16   Page 19 of 31

proof of claim in the amount of $1,308,500.00 is entitled to the allowance in the full amount based on the documentation attached to the AOAO proof of claim. All of the objections filed by 1910 were denied.

41. 1910 is not entitled to any damages on its counterclaim, punitive damages or injunctive relief.

42. The AOAO is entitled to its reasonable attorneys' fees pursuant to Haw. Rev. Stat. § 514B-157 and the AOAO's Declaration and Bylaws.

43. A creditor is entitled to attorneys' fees if (1) the claim is an allowed secured claim, (2) the creditor is oversecured, and (3) the fees are reasonable, and (4) the fees are provided for under the agreement.

44. The AOAO is entitled to an award of all of its pre-petition and post-petition attorneys' fees and costs against 1910. 1910 has not identified any particular objection to the documentation supporting the AOAO's $1,929,370.12 claim and said AOAO claim will be allowed in the full amount.

45. The AOAO's amended proof of claim filed on May 12, 2015, is in the amount of $1,929,370.12 will be allowed in full pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. Rule 3001(f).

46. The AOAO is an oversecured creditor since the total claims of $1,929,370.12 of the AOAO and the full allowed secured claim of PGL in the amount of $2.6 million are less than the value of the collateral securing the

combined secured claim of PGL and the AOAO claims. The collateral securing the secured claims of PGL and AOAO ranges in estimated value from $5.2 million to $14.7 million.

47.     The Ninth Circuit in In re Kord Enterprises II, 139 F.3d 689 (9th Cir. 1998), determined that an oversecured creditor's reasonable attorneys' fees are allowed under 11 U.S.C. § 506(b).

48.     In In re Dalessio, 74 B.R. 721 (B.A.P. 9th Cir. 1987), the Bankruptcy Appellate Panel held that 11 U.S.C. § 506(b) requires such fees and costs be "reasonable," which embodies a range of human conduct.  "The key determinant is whether the creditor incurred expenses and fees that fall within the scope of the fees provision in the agreement, and took the kinds of actions that similarly situated creditors might reasonably conclude should be taken, or whether such action and fees were so clearly outside the range as to be deemed unreasonable."  Id., at 723.

49.     The Dalessio court wrote that in evaluating an oversecured creditor's application for attorneys' fees, the bankruptcy court should determine whether, considering all relevant factors, including duplication, the creditor reasonably believed that the services employed were necessary to protect its interest in the debtor's property.

U.S. Bankruptcy Court - Hawaii   #15-90006   Dkt # 193   Filed 03/04/16   Page 21 of 31

50.     The AOAO is one of 1910's largest creditors, with unpaid maintenance fees and assessments.

51.     The AOAO moved this Court (1) to set an early date for the filing of a plan (Dkt. No. 82); (2) filed objections to the Disclosure Statement which resulted in 1910 incorporating a "drop dead" provision whereby a Chapter 11 trustee would be appointed if the reorganized debtor missed a plan payment for 30 days; (3) objected to the extended payout period and reduced the original final payment date of 2030 or 2031, down to five years after the Effective Date of the Plan; and (4) investigated and required the recovery of Bruce C. Stark's one-year insider preference payments in excess of $300,000.00 to be repaid or accounted for, which were not included in the original 1910 Plan.

52.     The AOAO also moved for the appointment of trustee and worked with the AOAO's General Manager to compel 1910 to remediate the City and County of Honolulu Notice of Violation, to improve the condition of the 1910 parking area and surrounding landscaping and the day-to-day operations of the 1910 commercial area, including waste collection, the removal of graffiti and preventing the further deterioration of 1910's commercial area.

53.     The AOAO moved this Court for an early filing of the Plan since Case No. 09-01682, filed in July 2009 was finally closed in February 2012, two and a

U.S. Bankruptcy Court - Hawaii   #15-90006   Dkt # 193   Filed 03/04/16   Page 22 of 31

half years later.  By comparison, Bankruptcy Case No. 15-00009 was filed on January 5, 2015, and the Plan was confirmed on December 23, 2015.

54.    In <u>In re Mark Atwood</u>, 293 B.R. 227 (B.A.P. 9th Cir. 2003), the court discussed whether an oversecured creditor, like the AOAO, seeking attorneys' fees under 11 U.S.C. § 506(b) had to file, serve and notice a fee application under Rule 2016, or whether the oversecured creditor might proceed by way of the creditor's proof of claim.  The Ninth Circuit Bankruptcy Appellate Panel concluded as to the procedure for the allowance and award of an oversecured creditor's 11 U.S.C. § 506(b) attorneys' fees, that an oversecured creditor could proceed as part of the secured creditor's proof of claim.

55.    The AOAO's requested 11 U.S.C. § 506(b) attorneys' fees are reasonable and necessary to protect the AOAO's collateral.

56.    While PGL was secured by the 1910 leasehold, it had additional collateral, including the "sandwich" position of a non-debtor entity controlled by Bruce C. Stark, which could be foreclosed upon to satisfy all or part of the PGL secured claim.  The AOAO had only the 1910 leasehold interest and had an interest in making sure the 1910 property was maintained, protected and preserved, arguing for a "reserve" fund to protect 1910's property in the future.

U.S. Bankruptcy Court - Hawaii   #15-90006   Dkt # 193   Filed  03/04/16   Page 23 of 31

57. The AOAO, to protect the collateral securing its statutory and contractual interest, took an active role in protecting 1910's commercial property, in both its current and future conditions.

58. Based on the work performed, the AOAO is entitled to treat all of its 11 U.S.C. § 506(b) attorneys' fees as an 11 U.S.C. § 503(b)(4) administrative expense claim, and be paid in full, in cash, on the Effective Date of the Plan pursuant to 11 U.S.C. § 1129(a)(9)(A).

59. A creditor's professional fees, including attorneys' fees, may be entitled to 11 U.S.C. § 503(b)(4) administrative claim priority, where the creditor shows two things: (1) the claimant was a creditor of the estate, and (2) the creditor made a "substantial contribution" to the bankruptcy case.

60. In this case, the AOAO has made a "substantial contribution" to the reorganization. Neither the senior secured creditor PGL, nor any other creditor, including the scheduled unsecured creditors, the Pulley Trust and the McCorriston Miller Mukai MacKinnon firm, participated in the case beyond filing notices of appearance or showing up at a hearing. PGL did not participate in these proceedings because PGL had additional collateral, "sandwich" positions pledged by a Bruce C. Stark entity. PGL did not file a proof of claim and did not vote to accept or reject the Plan or critique the Disclosure Statement.

U.S. Bankruptcy Court - Hawaii   #15-90006   Dkt # 193   Filed 03/04/16   Page 24 of 31

61. The AOAO had a self-interest in expediting the reorganization process since some of the AOAO filed claims went back to December 2008. While 1910 I, Case No. 09-01682, lasted over two and a half years, the AOAO's pressure for an expedited procedure requiring a filing of a plan in June 2015 benefitted the AOAO and the other creditors by setting an early deadline for the filing of a disclosure statement and plan. (Case No. 15-00009, Dkt. No. 82) The AOAO also raised the issues of recovering the $300,000.00 in "insider" preference payment to Bruce C. Stark, which was not originally dealt with in the first 1910 Plan, and the enforcement of the "absolute priority" rule.

62. There were only three proofs of claim filed in this case, the claims of the AOAO and two by tax authorities. None of the other creditors even filed proofs of claim. The only participation in the Plan confirmation process was by the AOAO, including its objections to the Disclosure Statement and an objection to the balloting (Bankruptcy Case No. 15-00009; Dkt. No. 159) on the grounds, *inter alia,* that 1910's special counsel did not qualify to vote for acceptance of the Plan under § 1129(a)(10) and the only other ballot, the claim of attorney Guy Sibilla, the attorney for Chef Chai Chaowasaree, was for $4,500.00 (the scheduled amount of the claim since Guy Sibilla did not file a separate proof of claim for a different amount).

63.    The AOAO filed an objection to the balloting process, whereby 1910's special counsel, McCorriston Miller Mukai MacKinnon, was deemed a non-insider pursuant to 11 U.S.C. § 1129(a)(10).  The Office of the United States Trustee made appearances, according to the docket, but the U.S. Trustee did not file anything related to the Disclosure Statement, the balloting process or confirmation of the Plan.  The AOAO also filed two (2) Supplements to objection to the AOAO's Objection to the Plan (Bankruptcy Case No. 15-00009; Dkt. Nos. 175 and 176) and filed a Motion to Appoint a Trustee (Bankruptcy Case No. 15-00009; Dkt. No. 202).  The AOAO argued that the original 1910 plan violated the "absolute priority" rule since Bruce C. Stark was to receive 100% of the equity of the reorganized debtor on the Effective Date of the Plan, where more senior unsecured creditors would not receive their final payments until 2030, later reduced to five (5) years after the effective date.

64.    During these proceedings, including the motion to appoint a trustee, the AOAO provided evidence and testimony on the condition of 1910's commercial property and suggested remedial actions.  The AOAO, in the context of the confirmation process and the motion for appointment of a trustee, raised issues of the operations of 1910 and what had to be done to improve the value of the property, including cleaning up the graffiti, removal of a parking lot sealant and

U.S. Bankruptcy Court - Hawaii   #15-90006   Dkt # 193   Filed 03/04/16   Page 26 of 31

general conditions, including waste and trash removal and correction of the City and County of Honolulu Notice of Violation.

65. The AOAO's motion to appoint a trustee prompted 1910 to take action to improve the condition of the property, including a general clean up of the parking area, which improved the property for use by the restaurant clientele, and remedy the pending City and County of Honolulu Notice of Violation.

66. The Ninth Circuit allows creditor's attorneys' fees as an administrative claim under 11 U.S.C. § 503(b)(4) where there is a "substantial contribution" to the reorganization. The AOAO's participation made a "substantial contribution" to the reorganization by improving the operations of the debtor and raising the issue of § 1129(a)(11) feasibility and the absence of a "reserve" for improvements and maintenance of the property after the Effective Date. 1910 failed to account for or allocate from future rents a "reserve" fund to maintain and improve the property, or to keep the property's status as a desirable commercial location.

67. While the Court denied the AOAO's motion to appoint a trustee, the evidence submitted by the AOAO in support of the Motion to Appoint a Trustee included reports and photographs of Ms. Stephany Sofos and the Declaration and emails of the AOAO's General Manager, Mr. Jose Dominguez, to 1910's property managers for the period October 2014 to the present. The AOAO introduced

U.S. Bankruptcy Court - Hawaii   #15-90006   Dkt # 193   Filed 03/04/16   Page 27 of 31

emails of Chef Chai Chaowasaree and his attorney, Guy Sibilla, as to the condition of the property.  All of this evidence submitted as part of the AOAO's motion to appoint a trustee showed the defects and deficiencies of 1910's operations and maintenance of the commercial area and the need for renovations and improvements.

69.    In this case, even though the Court ultimately denied the AOAO's motion to appoint of a trustee, evidence submitted by the AOAO during the evidentiary hearing on the motion to appoint a trustee identified the defects and deficiencies in the 1910's operation of the commercial property and suggested methods of improving the property for the benefit of 1910's tenants and their clientele and the reorganized debtor.  The AOAO argued that as part of the 11 U.S.C. § 1129(a)(11) "feasibility" requirement for the confirmation of the Plan, 1910 had to establish a "reserve" account for future improvements.

70.    The AOAO made a "substantial contribution" to the reorganization plan.  Without a creditor's committee or active participation by PGL, or the other unsecured creditors, including McCorriston Miller Mukai McKinnon or the Pulley Trust, the AOAO had to act.  The Office of the United States Trustee did not file any substantive pleadings in this case.  Without the AOAO, Bruce C. Stark, as per the original filed Plan (Bankruptcy Case No. 15-00009; Dkt. No. 116), would have retained the $300,000.00 insider preference paid to him and the violation of the

U.S. Bankruptcy Court - Hawaii   #15-90006   Dkt # 193   Filed  03/04/16   Page 28 of 31

"absolute priority" rule would not have been raised. The AOAO's objection reduced of the term of the final Plan payments from 2030 to five (5) years after the Effective Date.

71. Based on the Findings of Fact and Conclusions of Law, the AOAO is granted an allowance and award of attorneys' fees and costs pursuant to 11 U.S.C. §§ 506(b) and 503(b)(4), in the amount of $1,929,370.12, from the petition date through January 2016.

72. The amount awarded should be deemed an administrative expense priority and paid pursuant to 11 U.S.C. § 1129(a)(9)(A), paid in full, in cash, on the Effective Date of the confirmed Plan.

## CONCLUSION

1. By these *Findings of Fact and Conclusions of Law*, the AOAO is entitled to:

(A) A pre-petition claim in the amount of $1,308,500.00 as an oversecured claim, as evidenced by the Proof of Claim filed on May 12, 2015;

(B) As an oversecured claim, post-petition interest from January 5, 2015, to January 31, 2016, $11,592.33 accruing at the rate of $295.626 per diem;

(C) Post-petition attorneys' fees for O'Connor Playdon & Guben LLP and Revere and Associates LLLC in the amount of $567,936.25 (11 U.S.C. § 506(b));

U.S. Bankruptcy Court - Hawaii   #15-90006   Dkt # 193   Filed 03/04/16   Page 29 of 31

(D)    Pre-petition attorneys' fees for O'Connor Playdon & Guben LLP and Revere and Associates LLLC in the amount of $154,835.89, included in the $1,308,500.00 proof of claim amount; and

(E)    The post-petition, 11 U.S.C. § 506(b) attorneys' fees and costs should be treated as a 11 U.S.C. § 1129(a)(9)(A) and paid in full, in cash, on the Effective Date of the Plan.

2.    As to 1910 Partners' counterclaim,

(A)    1910 should take nothing as to its claims for parking, lost profits, punitive damages or injunctive relief as per this Court's orders in limine;

(B)    1910 is not entitled to any injunctive relief to keep the parking open at 11:00 p.m.;

(C)    The AOAO's allocation of non-utility maintenance expenses between the AOAO's residential area and 1910's commercial areas were fairly and reasonably allocated pursuant to Haw. Rev. Stat. § 514B-144, the Declaration and the Bylaws;

(D)    Non-utility maintenance expenses were properly allocated under the "business judgment rule," were regularly called and announced at monthly and annual AOAO meetings and the regularly scheduled AOAO Budget Meetings, and the non-utility maintenance fees were allocated "in good faith" and

U.S. Bankruptcy Court - Hawaii   #15-90006   Dkt # 193   Filed 03/04/16   Page 30 of 31

there was no showing of "bad faith" by the AOAO in making such non-utility maintenance fees.

**END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW**

31