

SO ORDERED

Lloyd King
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br>1910 PARTNERS,<br><br>        Debtor. | Case No. 15-00009<br>(Chapter 11) |
| ASSOCIATION OF APARTMENT OWNERS OF CANTERBURY PLACE,<br><br>        Plaintiff,<br><br>  vs.<br><br>1910 PARTNERS, a Hawaii limited partnership,<br><br>        Defendant. | **Adversary No. 15-90006**<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: 1910 PARTNERS' MOTION FOR RECONSIDERATION OF (1) FINDINGS OF FACT AND CONCLUSIONS OF LAW ENTERED MARCH 4, 2016, AND (2) JUDGMENT ENTERED MARCH 4, 2016<br><br>Hearing:<br>Date:   April 28, 2016<br>Time:   9:30 a.m.<br>Judge:  The Honorable Lloyd King |

## I.    INTRODUCTION

This is an adversary proceeding in bankruptcy. The Court files these Findings of Fact and Conclusions of Law Re: Defendant 1910 Partners' Motion for Reconsideration of (1) Findings of Fact and Conclusions of Law Entered March 4, 2016, and (2) Judgment Entered March 4, 2016.

1.    On March 4, 2016, this Court filed its Findings of Fact and Conclusions of Law and Judgment.

2.    On March 18, 2016, 1910 Partners ("1910") timely filed its Motion for Reconsideration of (1) Findings of Fact and Conclusions of Law Entered March 4, 2016, and (2) Judgment Entered March 4, 2016 ("Motion for Reconsideration").

3.    On April 13, 2016, Plaintiff Association of Apartment Owners of Canterbury Place ("AOAO") filed its Memorandum in Opposition to Defendant's Motion for Reconsideration, and on April 21, 2016, 1910 filed its Reply to AOAO's Memorandum in Opposition to Motion for Reconsideration.

4.    A hearing on 1910's Motion for Reconsideration came on before the Honorable Lloyd King, Judge of the United States Bankruptcy Court for the District of Hawaii.  Chuck C. Choi and Neil Verbrugge appeared for 1910 Partners and Jerrold K. Guben and Miranda F. Tsai appeared for the AOAO.  No other parties appeared or filed a responsive pleading.

## II.    FINDINGS OF FACT

5      On January 5, 2015, the 1910 filed its second Chapter 11 petition.  The first Chapter 11, *In re 1910 Partners*, Case No. 09-01682 ("1910 I") was filed on July 24, 2009, and that case was closed on February 15, 2012.

6.      In Case No. 15-00009 ("1910 II"), the AOAO timely filed its proof of claim in the amount of $1,308,500.00, as a secured claim.

7.      On September 30, 2014, the AOAO filed *Association of Apartment Owners of Canterbury Place v. 1910 Partners, et. al.*, Case No. 14-1-2067 (First Circuit, State of Hawaii), a foreclosure complaint, which was removed to this Court as Adv. Proc. No. 15-90006, including 1910's counter claims.

8.      On January 25, 2016, a trial in Adv. Proc. No. 15-90006 was commenced in this Court.  The AOAO's proof of claim in Case No. 15-00009 was to be liquidated and allowed in Adv. Proc. No. 15-90006, 1910's counterclaim in Adv. Proc. 15-90006 was to be adjudicated and any amounts awarded to 1910 on its counterclaim would be set off or deducted from the AOAO's Proof of Claim in Case No. 15-00009, as provided by Section 3.4 of the Second Amended Plan:

> **3.4.   Class 4:   Allowed AOAO Claim**
>
> **3.4.1 Classification:**    Class 4 consists of the Allowed AOAO Claim.
>
> **3.4.2 Treatment:**   The Counterclaims filed by the Debtor in the AOAO Adversary, shall be deemed to be an objection to the

AOAO Claim. Unless the AOAO and the Debtor agree to a different treatment <u>the Debtor shall pay the AOAO one hundred percent (100%) of its Allowed Claim after it is liquidated by the Bankruptcy Court in the AOAO Adversary [Adv. Proc. No. 15-90006] as follows:</u>

- Beginning March 15, 2016, until the Refinance Deadline, the Debtor shall make monthly payments of $18,000.00 at 6.75% simple interest per annum.
- On or before the Refinance Deadline [January 31, 2019], the Debtor shall pay the balance of the AOAO claim in full.

(emphasis added.)

9.    On March 4, 2016, the Judgment of this Court was docketed. According to 1910's Motion for Reconsideration, 1910 does not seek to reconsider the entire March 4, 2016, Judgment. Rather, 1910 asks this Court to reconsider only a portion of the following Findings of Fact and Conclusions of Law, related to the allowance of the AOAO's post-petition professional fees as a § 503(b)(4) administrative expense priority and to be paid as a § 1129(a)(9)(A) claim, in full, in cash, on the effective date of the 1910 Second Amended Plan of Reorganization. The portion of the Judgment of March 4, 2016, which 1910 asks this Court to reconsider is as follows:

70.    The AOAO made a "substantial contribution" to the reorganization plan. Without a creditor's committee or active participation by PFL, or the other unsecured creditors, including McCorriston Miller Mukai McKinnon or the Pulley Trust, the AOAO had to act. The Office of the United States Trustee did not file any substantive pleadings in this case. Without the AOAO, Bruce C. Stark, as per the original filed Plan (Bankruptcy Case No. 15-00009; Dkt. No. 116), would

have retained the $300,000.00 insider preference paid to him and the violation of the "absolute priority" rule would not have been raised. The AOAO's objection reduced of the term of the final Plan payments from 2030 to five (5) years after the Effective Date.

71.     Based on the Findings of Fact and Conclusions of Law, the AOAO is granted an allowance and award of attorneys' fees and costs pursuant to 11 U.S.C. §§ 506(b) and 503(b)(4), in the amount of $1,929,370.12, from the petition date through January 2016.

72.     The amount awarded should be deemed an administrative expense priority and paid pursuant to 11 U.S.C. § 1129(a)(9)(A), paid in full, in cash, on the Effective Date of the confirmed Plan.

## CONCLUSIONS

1.     By these *Findings of Fact and Conclusions of Law*, the AOAO is entitled to:

(A)     A pre-petition claim in the amount of $1,308,500.00 as an oversecured claim, as evidenced by the Proof of Claim filed on May 12, 2015;

(B)     As an oversecured claim, post-petition interest from January 5, 2015, to January 31, 2016, $11,592.33 accruing at the rate of $295.626 per diem;

(C)     Post-petition attorneys' fees for O'Connor Playdon & Guben LLP and Revere and Associates LLLC in the amount of $567,936.25 (11 U.S.C. § 506(b));

(D)     Pre-petition attorneys' fees for O'Connor Playdon & Guben LLP and Revere and Associates LLLC in the amount of $154,835.89, included in the $1,308,500.00 proof of claim amount; and

(E) The post-petition, 11 U.S.C. § 506(b) attorneys' fees and costs should be treated as 11 U.S.C. § 1129(a)(9)(A) and paid in full, in cash, on the Effective Date of the Plan.

10. As per these Findings of Fact and Conclusions of Law, this Court awarded the AOAO its $567,936.25 professional fees as a post-petition §503(b)(4) administrative expense priority claim to be paid pursuant to 11 U.S.C. § 1129(a)(9)(A), in cash, in full, on the effective date, of the Second Amended Plan of Reorganization, confirmed on March 4, 2016.

11. The AOAO's professionals on February 11, 2016, proffered the attorney's detailed timesheets as part of the AOAO's Proposed Findings of Fact and Conclusions of Law, requesting that AOAO's counsel's detailed timesheets be filed under seal on the ground that the detailed timesheets contained attorney-client privileged material.

12. 1910 did not object to the AOAO's Motion to file its post-petition attorney's fees and costs under seal or oppose the AOAO's motion to file the detailed timesheets under seal.

13. This Court has been the presiding judge in the first bankruptcy case of *In re 1910 Partners*, Case No. 09-01682 ("1910 Partners I"), the AOAO's motion to reopen that case, the second bankruptcy case of *In re 1910 Partners* Case No. 15-00009, the adversary proceeding of Adv. Pro. No. 15-90006, the trial in Adv. Pro. No. 15-90006 and has presided over all proceedings since July 2009.

14. The AOAO's § 503(b)(4) "substantial contribution" involved participation in all phases of Case No. 15-00009 and Adv. Proc. No. 15-90006, including the plan confirmation process.

## A. PARTICIPATION OF THE AOAO IN CASE NO. 15-00009.

15. Section 503(b)(4)[1] requires that the creditors' professionals make a "substantial contribution". In this case, there was no creditors' committee appointed and the other creditors, including the senior secured creditor, Pacific Guardian Life ("PGL") and the unsecured creditors, did not participate, except as noted below.

16. There was virtually no participation by PGL, except for the filing of a notice of appearance. Only the Debtor and AOAO filed written pleadings, as noted on the docket.[2]

_____

[1] 11 U.S.C. § 503(b)(4) provides,

> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

[2] As to the written "pleadings" in Case No. 15-00009, below is a complete list of filings other than those made by the AOAO or 1910. The Office of the United States Trustee did not file a single substantive pleading, and the other participants filed "Notices of Appearance" but no substantive pleadings.

| Docket No. | Pleading | Party |
|---|---|---|

17.    In a review of the Docket in Case No. 15-00009, including the minutes of the court hearings, creditors and parties other than AOAO, rarely participated in the noticed scheduled hearings.[3]

### B.    PREFERENCE PAYMENTS TO DEBTOR'S INSIDERS

18.    The AOAO investigated the pre-petition insider payments to Bruce Stark and family members.  The following 11 U.S.C. § 547(b)(4)(B)-type payments were made by Mr. Stark to himself, to his controlled entities and to his family members.

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

| | | |
|---|---|---|
| 19 | Notice of Appearance | Pacific Guardian Life |
| 20 | Notice of Appearance | Pulley Trust |
| 22 | Notice of Appearance | State of Hawaii |
| 177 | Notice of Appearance | Pulley Trust |
| 246 and 247 | Substitution of Counsel | Pulley Trust |

[3]    The following Docket Numbers reflect the appearances by counsel in noticed and scheduled hearings, other than counsel of the AOAO and 1910.

| Docket No. | Party Appearing |
|---|---|
| 120 | United States Trustee |
| 134 | United States Trustee; State of Hawaii |
| 170 | Pulley Trust |
| 181 | Pulley Trust |
| 198 | Pulley Trust |
| 233/234 | Pulley Trust |

There are 266 docket entries in Case No. 15-00009.

| | | | |
|---|---|---|---|
| EFG ASSOCIATES<br>c/o B. Stark<br>11921 Love Orchid Lane<br>Las Vegas, NV 89138<br>Relationship: | 1/8/14<br>2/6/14<br>210/14<br>3/7/14<br>3/7/14<br>4/11/14<br>5/12/14<br>6/2/24 [sic]<br>7/1/14<br>8/1/14<br>8/18/14<br>9/15/14<br>10/15/14<br>11/10/14<br>11/26/14 | $ 23,660<br>9,660<br>14,000<br>9,660<br>14,000<br>23,730<br>23,800<br>23,870<br>23,870<br>23,870<br>23,870<br>23,870<br>23,940<br>9,940<br>10,010 | $ 28,000 |
| BCS MANAGEMENT LLC<br>11921 Love Orchid Lane<br>Las Vegas, NV 89138<br>Relationship: | 5/21/14<br>6/23/14<br>7/7/14<br>721/14<br>8/27/14<br>9/17/14<br>10/1/14<br>11/10/14<br>12/1/14<br>12/1/14 | 1,751.12<br>$ 1,819.59<br>1,099.48<br>1,783.53<br>1,759.04<br>1,854.39<br>1,500.00<br>1,500.00<br>1,500.00<br>212.04 | $ 1,500.00 |
| JOANN N. POLLOCK<br>8220 Hollow Wharf Drive<br>Las Vegas, NV 89128<br>Relationship: Stark's Sister-in-law | 1/1/2014<br>2/1/2014<br>3/3/2014<br>4/1/2014<br>5/1/2014<br>6/1/2014<br>7/1/2014<br>8/1/2014<br>9/1/2014<br>10/1/2014<br>11/1/2014<br>12/1/2014 | $ 2,500.00<br>2,500.00<br>2,500.00<br>2,500.00<br>2,500.00<br>2,500.00<br>2,500.00<br>2,500.00<br>2,500.00<br>2,500.00<br>2,500.00<br>2,500.00 | |
| | **TOTAL** | **$326,529.19** | |

19.    These "insider" payments of over $320,000 in the one-year period prior to January 2015, were made at the same time that Mr. Stark and 1910 had defaulted on 1910's payments under the Court-approved Settlement Agreement in Case No. 09-01682.  During the "insider" preference period, 1910 was delinquent on its current maintenance fees owed to the AOAO as well as payments on unpaid maintenance fees going back to December 2008 and utility adjustment charges for the period September 2009, to August 2013, all of which were required to be paid according to the Court-approved Settlement Agreement of January 2012.

20.    In the period prior to January 2015, 1910 accrued indebtedness to the AOAO in the amount of $1,308,500, as per the AOAO Proof of Claim, Claim No. 3 filed on May 12, 2015.

21.    While 1910 was in default on its current maintenance fees prior to January 2015, the AOAO still had to make timely payments on the utility invoices from Hawaiian Electric Company ("HECO") and the City and County of Honolulu Board of Water Supply ("BWS") in order to assure continued electrical and water service.  These timely AOAO payments to HECO and BWS were made at the same time that Mr. Stark was paying himself and family members over $320,000.00.

22.     Under the confirmed Plan, pre-petition payments on 1910's delinquent maintenance fees, including HECO and BWS utility invoices, will not be fully paid until January 31, 2019, as a Class 4 claim in the Second Amended Plan of Reorganization, thereby requiring the AOAO to advance funds to 1910 and its tenants and then wait over four (4) years for 1910 to repay the amounts advanced and paid by the AOAO for utility service and regular expenses not paid by 1910.

### C.     AOAO PARTICIPATION IN PLAN OF REORGANIZATION.

23.     The AOAO, at Docket No. 82, on April 9, 2015, requested the Court fix an early date for the filing of 1910's plan of reorganization.  The Court fixed a deadline of June 17, 2015, for the filing of the 1910's Disclosure Statement and Plan of Reorganization.

24.     After 1910 filed its initial Plan of Reorganization, the AOAO participated in the plan confirmation process as follows:

| Date | Document | Docket |
|---|---|---|
| 07/29/2015 | [AOAO] Objections to 1910 Partners' Disclosure Statement | 131 |
| 10/07/2015 | [AOAO] Objections to 1910 Partners' Amended Chapter 11 Plan of Reorganization | 154 |
| 10/16/2015 | [AOAO] Objection to Ballot Tabulations RE: Votes of McCorriston Miller Mukai MacKinnon and Guy Sibilla | 159 |

| 11/03/2015 | Supplemental I to the [AOAO] objections to 1910 Partners' Amended Plan of Reorganization | 175 |
| 11/03/2015 | Supplemental II to the [AOAO] Objections to 1910 Partners' Amended Chapter 11 Plan of Reorganization | 176 |
| 11/17/2015 | Supplemental Filing to Objections to Confirmation of the Debtor's Plan of Reorganization | 197 |

25. The AOAO's pleadings were the only written pleadings, objections and comments filed with respect to the 1910 Plan. No other party or creditor, including the Office of the United States Trustee, filed any written pleadings, objections or comments with respect to 1910's initial Plan, the [First] Amended or the Second Amended Plans of Reorganization.

### D. PLAN PAYMENTS TO CREDITORS

26. 1910 filed its initial Plan on June 17, 2015, which proposed to pay the allowed Class 6 unsecured creditors in five (5) annual installments beginning March 1, 2025 and ending March 1, 2029, with 3% interest on the unpaid balance.

27. PGL's Class 2 claim would not be paid in full until November 2030.

28.     The AOAO's Class 4 secured claim of $1,308,500.00 would be paid at the rate of $18,000.00 per month for five (5) years, paid in full by 2021, with a balloon payment at the end of the five (5) year period, with the unpaid balance accruing interest at 3%.

29.     After the AOAO's objections and comments, the critical pay off date for the full payment of the AOAO Class 4 claim and the unsecured Class 6 creditors is now January 31, 2019. A payoff date of ten (10) years earlier than originally scheduled for the Class 6 unsecured creditors in 1910's June 17, 2015 Plan.

30.     The Refinance Date is now January 31, 2019, as per § 1.52 of the Second Amended Plan, and the allowed Class 4 AOAO secured claims will be paid at least two (2) years earlier than originally proposed in the June 17, 2015, plan.

31.     Case No. 09-01682 was closed in February 2012, after 30 months.  Case No. 15-00009 was filed in January, 2015.  To prevent a third Chapter 11 filing by 1910, AOAO and 1910 negotiated a new provision in the Second Amended Plan, which imposed a remedy if 1910 defaulted on the payments under the confirmed Plan.

32.     The AOAO argued that to prevent a third Chapter 11 filing, the Second Amended Plan should include as per Section 5.9, that the creditors may

reopen the Chapter 11 case and request this Court appoint a trustee, upon the re-opening of the case, should 1910 default on its plan payments. This provision was intended to prevent 1910 from filing a "Chapter 33," its third Chapter 11 case in succession, if 1910 defaulted on its plan payments.

33.     Paragraph 5.9 of the Second Amended Plan now provides:

> If the Debtor fails to make a payment required under the Plan, which failure continues for 30 days after a creditor provides written notice of such default to the Debtor, the creditor may file a motion to re-open the Chapter 11 Case (if the Chapter 11 Case has been closed) with a declaration describing the payment default in adequate detail. Provided the Court is satisfied that the Debtor has failed to cure a monetary default under the Plan, the Court shall appoint a Chapter 11 Trustee for the Chapter 11 Case and may do so without a hearing.

34.     In the AOAO's objections to the initial 1910 Plan filed on June 17, 2015, the AOAO objected to the 15 year payout period for the Class 6 unsecured creditors and the five (5) year payout for the Class 4 AOAO claims.

35.     The final confirmed Second Amended Plan provided for full payment of the Class 4 AOAO secured claim and the Class 6 unsecured creditor's claims, which 1910 inserted in the Second Amended Plan, on or before the Refinancing Date of the January 31, 2019, ten (10) years earlier than the initial proposed Class 6 payoff date of March 2029, as per the June 17, 2015, plan.

36. The AOAO also objected to the 3%, post-confirmation interest on the allowed claims, the Class 4 AOAO secured claim and Class 6 unsecured claim.

37. The Second Amended Plan of Reorganization increased the post-confirmation interest on the unpaid Class 4 AOAO claim *and* Class 6, the claims of the unsecured creditors, from 3% to 6.75%.

38. The 1910 I lasted approximately 30 months, only to be followed by 1910 II, filed after the default by 1910 on the terms of the Settlement Agreement.

### E. MOTION TO APPOINT A TRUSTEE, 11 U.S.C. § 1104

39. On November 24, 2015, the AOAO filed its Motion to Appoint a Trustee, submitting Exhibits and a Witness List. In its Motion to appoint a trustee, the AOAO argued that the condition of 1910's commercial premises had so deteriorated that a neutral third party, a trustee, had to be appointed to make sure that the property was properly maintained and remained a competitive rental property in the Waikiki commercial market, and 1910 could continue to lease its space to satisfy the required payments under the 1910 Plan.

40. The AOAO sought a trustee to ensure that 1910, or its tenants, did not incur another City and County of Honolulu, Department of Health notice of violation, and, among other things, see that the trash was properly collected, that

the parking area and the second floor was properly cleaned and maintained, and that the tenants' grease traps were cleaned.

      41.    The AOAO retained an expert witness, Stephany Sofos of S.L. Sofos, who prepared several reports on the 1910's commercial premises and made a comparative study of Canterbury Place with the Discovery Bay Center and Eaton Square, both mixed use condominiums of comparable age to the Canterbury, about 40 years of age, and the Wailana, which is older than the Canterbury. Ms. Sofos' comparative study of these mixed use condominiums was filed with the Court

      42.    The AOAO's general manager, Jose Dominguez, submitted a two-volume set of emails and correspondence between himself and the property managers of 1910's premises. The exchange between Mr. Dominguez and 1910's property managers consisted of over 1,400 pages of emails and correspondence (Dkt. Nos. 203, 204, 215 and 226) and described 1910's deficient and defective administration of 1910's commercial premises.

      43.    The AOAO argued that given the multi-year payout under the 1910 Second Amended Plan of Reorganization, 1910 should be compelled to properly maintain the commercial premises to assure that the leasing of 1910's premises was competitive in the Waikiki commercial market.

      44.    The Court denied the AOAO's Motion for the appointment of trustee, but the evidence submitted, including the reports of Ms. Sofos and the

correspondence between Mr. Dominguez and 1910's property managers were entered into the record as evidence of 1910's administration of the commercial premises.

45.     The AOAO was concerned that, given the multi-year plan of reorganization, maintenance of 1910's commercial premises was essential to a successful reorganization.  Any deterioration in the commercial premises, by way of lost tenants or an inability to attract new tenants in the competitive Waikiki retail market, jeopardized the Plan's payments.

46.     In the confirmation of the Plan, the AOAO raised the issue of "feasibility" of 11 U.S.C. § 1129(a)(11) because the Plan lacked a "reserve" fund to maintain the 40 years old commercial premises.

47.     The AOAO argued that 1910's plan was defective and could not be confirmed because it failed to create a "reserve" or provide for a standard "reserve analysis" which should be required for a 40 year condominium project, to show what was necessary to maintain 1910's premises up to the standards of the Waikiki retail rental market.

48.     The AOAO argued that a "reserve" account was necessary to make the 1910 commercial premises competitive with newer mixed use condominium projects in Waikiki, maintain the present commercial tenants and attract new commercial tenants as existing tenants leave.

### F.  ADVERSARY PROCEEDING, *ASSOCIATION OF APARTMENT OWNERS OF CANTERBURY PLACE V. 1910 PARTNERS*, ADV. PROC. NO. 15-90006

49.     In the Chapter 11 case, Case No. 15-00009, the AOAO filed a proof of claim, Claim No. 3 for $1,308,500.00.

50.     In the pre-petition, state court case, Civil No. 14-1-2067-09 (First Circuit, State of Hawaii), 1910 sought a reallocation of the maintenance fees between the AOAO and 1910, and a reduction or setoff of 1910's counterclaim damages against the AOAO's claim by way of a reduction in the AOAO's allowed secured claim.

51.     The 1910 Plan in Case No. 15-00009, provided in Class 3.4.2 that the allowed pre-petition claim of the AOAO was to be liquidated in Case No. 15-00009 but was to be determined in Adv. Proc. No. 15-90006 by way of a setoff and reduction by way of 1910's counterclaim, thereby integrating Case No. 15-00009 and Adv. Proc. No. 15-90006.[4]

---

[4] 1910's Second Amended Plan provides,

**3.4.    Class 4:  Allowed AOAO Claim**

**3.4.1 Classification:**  Class 4 consists of the Allowed AOAO Claim.

**3.4.2 Treatment:**  The Counterclaims filed by the Debtor in the AOAO Adversary, shall be deemed to be an objection to the AOAO Claim. Unless the AOAO and the Debtor agree to a different treatment the Debtor shall pay the AOAO one hundred percent (100%) of its Allowed Claim after it is liquidated by the Bankruptcy Court in the AOAO Adversary as follows:

- Beginning March 15, 2016, until the Refinance Deadline, the Debtor shall make monthly payments of $18,000.00 at 6.75% simple interest per annum.

52.     The AOAO's proof of claim contained 11 exhibits and 266 pages of documentation.  Despite all of the documentation, in compliance with Rule 3001(f), Fed. R. Bankr. P., 1910 argued that the AOAO's $1,308,500.00 proof of claim should be reduced by $64,850.40 about 4.96% of the AOAO pre-petition secured claim.

53.     In this Court's March 4, 2016 judgment, this Court ruled that 1910 should take nothing by way of its counterclaim.

    2.     As to 1910 Partners' counterclaim,

       (A)     1910 should take nothing as to its claims for parking, lost profits, punitive damages or injunctive relief as per this Court's order in limine;

       (B)     1910 is not entitled to any injunctive relief to keep the parking open at 11:00 p.m.

       (C)     The AOAO's allocation of non-utility maintenance expenses between the AOAO's residential area and 1910's commercial areas were fairly and reasonably allocated pursuant to Haw. Rev. Stat. § 514B-144, the Declaration and the Bylaws;

       (D)     Non-utility maintenance expenses were properly allocated under the "business judgment rule," were regularly called and announced at monthly and annual AOAO meetings and the regularly scheduled AOAO Budget Meetings,

---

     •  On or before the Refinance Deadline, the Debtor shall pay the balance of the AOAO Clam in full.

(emphasis added)

.

and the non-utility maintenance fees were allocated "in good faith."

54.     As to the allocation of the maintenance expenses between the AOAO and 1910, the Court ruled in favor of the AOAO.  Based on *Hawkins v. Waikoloa Village Association*, 2008 Haw. App. LEXIS  52 (2008) and Chapter 514B-141 and 143, Haw. Rev. Stat. and the AOAO Declaration, Section 13, this Court found that the AOAO's maintenance fee allocation between the AOAO and 1910 satisfied the "business judgment" test and the maintenance fee allocation was promulgated in "good faith" by the AOAO.

55.     In its counterclaim, in Adv. Proc. No. 15-90006, 1910 argued that it was entitled to damages, or a setoff against the AOAO secured claim, due to the AOAO's failure to bargain in "good faith".  Despite 1910's allegations that the AOAO failed to bargain in good faith, neither 1910, Mr. Stark nor Mr. Stark's representatives attended any of the monthly or annual AOAO meetings, even though, as an owner, Mr. Stark, received notice of the meetings.

56.     The AOAO prepared its annual budget in the fall of the year preceding the effective date of the budget, January 1.  Despite alleging that the AOAO failed to negotiate in good faith over the annual maintenance fee allocation between the AOAO and 1910, neither Mr. Stark nor his representatives participated in the annual AOAO budget making process.

57.     Despite the allegations that the AOAO violated Paragraph 6 of the Settlement Agreement,[5] and that the AOAO failed to negotiate in good faith, it was actually Mr. Stark who failed to bargain in good faith when neither Mr. Stark nor his representatives participated in the AOAO's monthly and annual meetings or the AOAO's annual budget making process.

### G.     THE PARKING AREA CLAIMS

58.     1910 made specific claims as to the operations of the Canterbury Place parking area, seeking injunctive relief to keep the security gate open past the current 11:00 P.M. closing time and a claim to recover for the purported lost parking revenues caused by the 11:00 P.M. parking lot closing time.

59.     Mr. Stark not only objected to the 11:00 P.M. closing time, even though all of Mr. Stark's restaurant tenants closed at 10:00 P.M. and it was determined at trial that none of the tenants requested a later closing time. Mr. Stark

---

[5] Paragraph 6 of the Settlement Agreement provides:

6.     Payment of Non-Utility Maintenance Fees Following Submetering Completion Date.  From the date of the Settlement Agreement, 1910 Partners and the AOAO will continue to negotiate in an attempt to reach agreement upon the categories of maintenance items and percentage allocations to the commercial units.  It is anticipated that an agreement will be reached, and that all such items will be fixed and agreed to as part of the budgeting process prior to the Submetering Completion Date.  In the event an agreement cannot be reached, then the provision of the Declaration of Horizontal Property Regime: Canterbury Place and of Hawaii law would be applicable, and all parties would retain their rights to dispute such future allocations, other than for utilities, (which shall be determined by the submeters).

sought an injunction to compel the AOAO to maintain 24/7 parking operations and authority to rent out parking stalls to non-AOAO residents.

60. After the AOAO took depositions of 1910's former property managers, Marie Lowder and Richard Hagstrom and Bruce Stark's Rule 2004 examination, it was established that (1) it was 1910's idea to install a security gate in the parking area because of several incidents and assaults, (2) it was 1910's suggestion that the security gate be closed at 11:00 P.M. and (3) 1910 solicited the AOAO to pay 50% of the installation costs of the security gate.

61. It was further determined that the present security gate and its rules of operations had been in effect since at least 1996, 20 years prior to the current trial date.

62. This Court ruled against Mr. Stark's claims related to the parking area, the security gate and alleged loss of parking revenues, the AOAO had to conduct discovery, request documents and depose 1910's former employees, Ms. Lowder and Mr. Hagstrom and Mr. Stark himself, when all of AOAO expenses, delay and expenditure of judicial resources could have been avoided had Mr. Stark simply asked his former employees when the security gate was installed, and under what conditions. The issue of extending the 11:00 PM closing time came not from Mr. Stark's tenants, or from Mr. Stark's former property managers,

but was the idea of Mr. Stark himself. These costs could have all been avoided had Mr. Stark made a minimum inquiry of his employees.

63. Rather than speaking to his former employees, Mr. Stark made the AOAO incur attorney's fees and costs and expenses to establish the defenses to 1910's allegations regarding the parking operations.

## III.  CONCLUSIONS OF LAW

### A.  1910's Motion for Reconsideration Must be Denied.

(1)  1910 filed its Rule 9023, Fed. R. Bankr. P. (Rule 59, Fed R. Civ. P.) motion on March 18, 2016, seeking a "reconsideration" of the Court's ruling that the AOAO's post-petition professional fees should be considered 11 U.S.C. § 503(b)(4)[6] expenses and paid pursuant to 11 U.S.C. § 1129(a)(9)(A),[7] as an administrative expense priority, in cash, in full, on the Effective Date of the Second Amended Plan.

---

[6] 11 U.S.C. § 503(b)(4) provides:

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

[7] 11 U.S.C. § 1129(a)(9)(A) provides,

(A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(2)     The AOAO's request for § 503(b)(4) and § 1129(a)(9)(A) payment of its post-petition professional fees was first raised in the closing argument by the AOAO counsel on January 28, 2016, and raised again in the AOAO [Proposed] Findings of Fact and Conclusions of Law submitted on February 11, 2016.  The AOAO Proposed Order was electronically transmitted to the Court's chambers.  Exhibits E and F and the Declaration of Jerrold K. Guben, requested an order authorizing the filing of the AOAO's counsel's detailed time entries under seal.[8]

(3)     The AOAO requested that the detailed time entries of its counsel (Exhibits E and F) be filed under seal, as per the Declaration of Jerrold K. Guben.  The AOAO proffered the AOAO's detailed time sheets with the Findings of Fact and Conclusions of Law, when the Findings of Fact and Conclusions of Law were electronically filed on February 11, 2016 and served on 1910's counsel.

(4)     The AOAO's Proposed Motion to file the detailed time entries, including the AOAO's reference to the detailed time sheet entries of the AOAO's counsel, was filed as Exhibit 9 to 1910's Motion for Reconsideration, indicating that 1910 had actual knowledge that the AOAO had proffered the time entries

---

[8] The AOAO, as per the Declaration of Jerrold K. Guben, requested the detailed time entries of O'Connor Playdon & Guben and Terrence Revere be sealed since they contained attorney-client privileged material.  When the AOAO's counsel began keeping their time records for submission to the AOAO for payment, there was no consideration that the time entries would be used for reimbursement as an administrative expense.

under seal as early as February 11, 2016, almost three (3) weeks before the March 4, 2016 Judgment.

(5)     1910 had notice of AOAO's request for its professional fees to be deemed § 503(b)(4) and § 1129(a)(9)(A) administrative expense for AOAO's request for post-petition treatment of the fees before the filing of this Court's Order of March 4, 2016.

(6)     As early as February 11, 2016, 1910 had the opportunity to request that the AOAO's detailed time sheets be filed and the AOAO's request to file the AOAO's detailed time sheets under seal be denied.

(7)     Notwithstanding the February 11, 2016, request for § 503(b)(4) treatment of the AOAO's post-petition fees and the AOAO's request to seal the AOAO's detailed time entries, 1910 did not object or ask the Court to deny the AOAO's Motion to file the AOAO's counsel's detailed time entries under seal, nor did 1910 request this Court to direct the AOAO to file its detailed time entries.

(8)     On February 11, 2016, the AOAO submitted its Proposed Findings of Fact and Conclusions of Law, which proposed that the AOAO's professional fees be accorded § 503(b)(4) administrative expense priority and be paid as a § 1129(a)(9)(A) administrative expense, in full, in cash, on the effective date of the confirmed plan.

(9)   The AOAO proffered its counsel's detailed time sheets under seal and 1910 never objected to the submission of the AOAO detailed time entries under seal.

### A.   THE AOAO IS ENTITLED TO RECEIVE ITS POST-PETITION ATTORNEY'S FEES AS A 11 U.S.C. § 503(b)(4) ADMINISTRATIVE EXPENSE PRIORITY CLAIM.

(10)   As noted above,  in Conclusions of Law Paragraph III.A.(2), the AOAO first raised the issue of its counsel's professional fees be deemed a § 503(b)(4) administrative expense priority and the payment of the AOAO's administrative expense priority claim be paid pursuant to 11 U.S.C. § 1129(a)(9)(A) in Case No. 15-00009, during the closing argument in Adv. Proc. No. 15-90006 on January 28, 2016.

(11)   In the AOAO's February 11, 2016, Proposed Form of Order and Findings of Fact and Conclusions of Law, the AOAO argued that the AOAO was entitled to a § 503(b)(4) administrative expense priority, and proffered the detailed timesheets.

(12)   1910 never requested that the AOAO's counsel's detailed timesheets be lodged in open court or opposed the AOAO's request for filing the AOAO's detailed timesheets under seal, even though 1910 had over three (3) weeks before the filing of the March 4, 2016, Order to request that the AOAO file its counsel's fees in open court.

**B.** **THE AOAO IS ENTITLED TO A § 503(b)(4) ADMINISTRATIVE EXPENSE PRIORITY CLAIM FOR ITS POST-PETITION PROFESSIONAL FEES AND BE TO PAID PURSUANT TO § 1129(a)(9)(A).**

(13)   The AOAO is entitled to a § 503(b)(4) administrative expense priority treatment, for making a substantial contribution to this chapter 11 case.

(14)   "Substantial contribution" pursuant to § 503(b)(4) takes many forms, including exposing wrongdoing by the debtor or the mismanagement of the estate's assets. *In re SonicBlue Incorporated*, 422 B.R. 204 (Bankr.N.D. Cal. 2009) (§ 503(b)(4), the administrative claim priority for counsel's fees where the Chapter 11 case was "riddled with wrong doing").

(15)   In the case at bar, 1910's mismanagement of 1910's property was reflected, in the rapid deterioration of the value of 1910's real property interest at Canterbury Place from $14.7 million, scheduled as of January 2015, on 1910's Schedule A, and a November 2015 appraisal by Mr. Richard Hallstrom of $5.2 million, a loss in value of 60%, in less than one year, of 1910's real property assets.

**C.** **A BANKRUPTCY COURT IS A COURT OF EQUITY AND IT MAY TAKE EQUITABLE CONSIDERATION INTO ACCOUNT IN DETERMINING ALLOWED PROFESSIONAL FEES.**

(16)   On April 28, 2016, 1910's Motion for Reconsideration came on for hearing.

(17)   As a court of equity and given the AOAO's substantial contributions and the conduct of 1910, the AOAO is entitled to the allowance and award of $567,000.00 in post-petition professional fees as an 11 U.S.C. § 503(b)(4) administrative expense priority claim to be paid and satisfied as provided for by 11 U.S.C. § 1129(a)(9)(A).

(18)   The appropriate remedy for Mr. Stark's conduct is to award the AOAO a § 503(b)(4) administrative expense priority claim for its post-petition professional fees.   The AOAO's actions were intended to, and did in fact, "substantially contribute in assuring the integrity of the reorganization process as well as the progress of the case".   The judicial response to Mr. Stark's conduct during both Case No. 15-00009 and Adv. Proc. No. 15-90006 should take into account the unnecessary expenses incurred by the AOAO in these proceedings caused by Mr. Stark's conduct.

(19)   Under these circumstances, and given Mr. Stark's conduct and 1910's defaults, the only appropriate response is to award and allow the AOAO's post-petition professional fees be accorded § 503(b)(4) and § 1129(a)(9)(A) administrative expense priority for the AOAO's counsel's fees and Mr. Stark's waste of time, and this Court's resources by his conduct.   The AOAO is entitled to a § 503(b)(4) administrative expense priority, for its post-petition professional fees to be paid as a § 1129(a)(9)(A) administrative expense.

(20)    As a court of equity and based on the exhibits, depositions and documents filed in Case No. 15-00009 and Adv. Proc. No. 15-90006, the Court will deny 1910 Partners' Motion for Reconsideration.

(21)    If the AOAO does not receive its post-petition professional fees pursuant to 11 U.S.C. § 1129(a)(9)(A), the AOAO would have to wait for three (3) years until January 31, 2019, to be reimbursed for all of its professional fees, that the AOAO is paying in the regular course of business.

An order will be entered denying 1910 Partner's Motion for Reconsideration.